[Crim. No. 23310. First Dist., Div. Four. Dec. 20, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
DANNY FONTANA, Defendant and Appellant.

[No. AO17686. First Dist., Div. Four. Dec. 20, 1982.]

In re DANNY FONTANA on Habeas Corpus.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Diane M. Griffiths, Deputy State Public Defender, for Defendant and Appellant and Petitioner.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Gloria F.

DeHart and Mary A. Roth, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**POCHÉ, J.—**■■ ■■■■ Danny Fontana appeals from an order revoking probation[1] granted after the imposition of sentence upon a plea of guilty to rape (former Pen. Code, § 261, subd. 3)[2] with the use of a deadly weapon (§ 12022). Revocation proceedings were instituted in the San Francisco Superior Court on grounds which were also the bases for independent criminal charges in Marin County on which appellant had not yet been tried. Prior to the revocation hearing appellant moved for a continuance until completion of the collateral criminal proceedings in Marin County. The motion was denied. Appellant's counsel moved for a continuance at the hearing on the ground that he was not prepared. This motion was also denied. Following the hearing, appellant's probation was revoked.

We reverse the order revoking probation and deny as moot the habeas corpus petition, which raises identical issues.

*Facts*

*The Procedural Background*

In November of 1975, appellant pled guilty to rape (former § 261, subd. 3) with the use of a deadly weapon, a dagger (§ 12022). Thereafter appellant was found to be a mentally disordered sex offender (MDSO) and criminal proceedings were suspended.

In May of 1978, the court granted appellant's request to terminate his commitment as an MDSO and reinstated criminal proceedings. Appellant was sentenced to state prison for the term provided for by law, but execution of the sentence was suspended, and he was admitted to probation for five years.

On June 19, 1981, the probation department requested the court to issue a bench warrant and revoke appellant's probation on the ground that he had been arrested in Marin County on June 17 on a charge of rape. The court summarily revoked appellant's probation and issued a bench warrant that same day.

---

[1]An order revoking probation is appealable as an order made after judgment affecting a defendant's substantial rights (Pen. Code, § 1237, subd. 2; *People* v. *Vickers* (1972) 8 Cal.3d 451, 453, fn. 2 [105 Cal.Rptr. 305, 503 P.2d 1313].)

[2]Unless otherwise indicated, all further statutory references are to the Penal Code.

On June 26, 1981, after appointing counsel for appellant, the court referred the matter to the probation department for a supplemental report and recommendation. The court indicated that it would continue the matter until July 17. Appellant and counsel requested that the hearing be suspended until the outcome of the trial on the Marin County charges. The court stated that it would remand appellant into custody pending a hearing on the report on July 17, "and at that time we'll probably put it over to see what happens in Marin County, but I want to get a report."

The matter came for hearing on July 17 before a different judge. The probation report set forth the facts of the Marin County arrest, and included the police report and a statement by the victim to the police. The probation officer, noting that appellant had complied with all the conditions of his probation, recommended that probation not be revoked at that time, but that the matter be continued until resolution of the charge in Marin County. Counsel for appellant also requested that the matter be continued until the charge was tried in Marin County. The court stated that it would follow the probation officer's recommendation and that the matter would "go off calendar, to be set again by the Probation Department." The court clerk then commented that appellant's probation had already been summarily revoked on June 19, 1980, "[s]o it is not a first-time motion on calendar." Defense counsel agreed that it was not appropriate to take the matter off calendar, but instead, a future calendar date should be set. The following colloquy occurred: "THE COURT: What date? [¶] MR. HERRICK: [defense counsel] He is to be arraigned in Superior Court in Marin on the 29th. That is the next court date we know of. [¶] THE COURT: What date are you recommending we put this over to? [¶] MR. HERRICK: I don't know how long it takes to get a matter through trial. [¶] MR. O'BRIEN: The People would be prepared to present evidence at an evidentiary hearing after there has been a preliminary transcript obtained from Marin County. I would suggest a continuance of, perhaps, three weeks. [¶] MR. HERRICK: I would still ask the matter trail the Marin proceeding. It's going to be a jury trial. There is no other basis in this particular case but the Marin charges so I think it would be an appropriate case to trail. [¶] I just can't tell you the dates because I don't know when it is going to be set for trial. If you wish to continue it sometime after the 29th on the understanding we would then know what the dates are, that would be fine. [¶] THE COURT: August the 14th at 9:30 in this department for hearing. [¶] MR. HERRICK: We should be ready to proceed with witnesses at that time? [¶] THE COURT: Yes."

On July 31, 1981, appellant filed a motion to continue the probation revocation hearing until after October 5, 1981, the date for trial on the rape charge in Marin County. The matter came for hearing on August 6. The People opposed the motion and informed the court that they were prepared to proceed with an evidentiary hearing on August 14. The following colloquy occurred, which

resulted in a denial of the motion for a continuance: "THE COURT: Anything further then, Mr. Herrick? [¶] MR. HERRICK: Only, as I think I indicated previously, this was the Court's initial inclination. I am asking the Court to do now, since we have the full information, what the Court intended to do in Court last time. [¶] THE COURT: I set it for hearing last time. [¶] MR. HERRICK: What happened last time, we were in court as a result of the probation report, which the Court has, which does recommend this case—this revocation trail the trial. [¶] The Court said, 'I will grant that. What is your date?' [¶] All I could give the Court at the time was an arraignment date in Superior Court in Marin County. So, as a result, the Court had no date to trail it after. [¶] Now we do know the Superior Court date in Marin County. [¶] THE COURT: Have you already served your subpoenas? [¶] MISS KLEE: We have the victim. That is the only witness necessary. [¶] MR. HERRICK: This is set for next week. I am going to be in a jury trial in another case. I will not be available on the 14th to do this so I would ask for a continuance from the 14th, under any circumstances, just so I can handle the case. [¶] This is a very difficult case to prepare for a Motion to Revoke Hearing. The defendant is in Marin County. That is where the case is being prepared for trial. He is being represented by the Marin County's Public Defender's Office. I am expected to defend — [¶] THE COURT: Do you have a date when the trial will be? [¶] MR. HERRICK: Yes, October 5th, which is stated in the motion. [¶] I ask this case be set to trail October 5th. [¶] MISS KLEE: We have discussed this with the District Attorney handling this case in that county. They see no reason why we should not put our motion to revoke on as speedily as possible. [¶] MR. HERRICK: I can only remind the Court that there is a no-bail hold on the defendant as a result of this proceeding at any rate. He is not going to go anywhere whether he is in Marin or San Francisco. This Court has him in custody until it resolves this under any circumstances. [¶] Submitted. [¶] MISS KLEE: Submitted. [¶] THE COURT: The Motion to Continue is denied. [¶] MR. HERRICK: I will be expected to go next week on this case? [¶] I am in trial. [¶] THE COURT: The Public Defender's Office has been appointed to represent the defendant. [¶] MR. HERRICK: It's been assigned to me. It's my case. [¶] THE COURT: I already ruled on it."

The matter came for hearing on Friday, August 14, 1981, before a third judge. Defense counsel's initial remark to the court was that he was not ready to proceed for the following reasons: (1) that week he had been in trial on a "difficult" case, and the previous week he had been in trial on a homicide case; (2) he received the 150-page packet of materials on the Marin County charge on that Monday, including a 70-page preliminary hearing transcript, which he had not yet reviewed due to his trial schedule; (3) because his client had been in custody in Marin County he had discussed neither the case nor the preliminary hearing evidence with him. The court inquired how long counsel would need to discuss the case with his client. Counsel responded that he would need one week to adequately prepare the case and discover whether a defense existed.

The court stated it would "pass this matter" for 45 minutes so counsel could talk with his client and report back on the "status of the defense." Counsel replied that he would not be any more prepared in 45 minutes.

After the 45-minutes recess, counsel announced he was not ready to proceed, that he had spent the time reading the preliminary hearing transcript, which he had not completed, that he had not yet read his client's lengthy statement to his trial counsel, and that he had not yet compared the police report to the preliminary hearing testimony to see whether there were inconsistencies which would warrant impeachment on cross-examination. Finally, he commented that his client had suggested questions and matters to review in the preliminary hearing transcript, which he had not yet had an opportunity to do. The court then stated it would bifurcate the hearing and just take the victim's testimony. Counsel interjected that he was not prepared to cross-examine the victim. The court then denied the motion for a continuance. Counsel rejoined that since he was unprepared to do so, he would not endeavor to cross-examine the victim. When the district attorney asked if the court would require the victim to "return here after this hearing," the court said "[n]o."

### The Hearing

The victim testified on direct examination about the details of the rape and sodomy perpetrated by appellant.

Defense counsel stated that he was not able to do a competent job of cross-examination due to lack of preparation, but that he would "endeavor to do some nature of cross-examination."

Bernice stated on cross that she had known appellant for two months and that he had been at her house on one occasion because appellant wanted to buy her husband's car. She had talked with appellant on many occasions at work.

She described the knife as having a deep-colored yellow green handle and commented that the blade was unusual because it did not have a pointed end. She remembered seeing that knife on appellant's key ring before.

She stated that appellant did not touch her with the knife and that he never hurt her with it. She also stated that appellant did not physically force or push her to the ground, and that he did not try to get the knife from her after she picked it up from the floor. She admitted that when she was on top of him, she tried to get him inside of her. She stated that he did not try to prevent her from leaving the room after the incidents. He accepted the fact that she would not give him the knife in the elevator. When asked why she returned the knife to him in the car, she responded: "Because it represented everything that had just

happened, and I wanted nothing to do with him." She thought that if she brought the knife home with her it would be like bringing the incident home also. "I didn't care, I just wanted it away. And I knew that he knew where we lived."

Counsel called appellant's wife, Charlotte Fontana, to testify in his behalf. She testified that she was familiar with the way that her husband carried his keys and that she had never seen him carry a knife on his key ring. She also stated that she had never seen her husband with a knife as the one drawn by Bernice.

Defense counsel then stated that he declined to call his client to the stand because of the pendency of the Marin criminal trial. He argued that his client's privilege against self-incrimination for purposes of that trial could not be adequately protected if he were to testify at the revocation hearing.

The court asked whether he had any other evidence, and reminded counsel that he would be willing to bifurcate the proceeding in order for him to produce additional evidence. Counsel responded that he did not want a continuance for that purpose, and that he was "prepared to resolve the matter" that day.

After argument by counsel, including a reiteration of the defense request that the matter be continued pending the outcome of the criminal trial, the court found "beyond a reasonable doubt" that appellant had violated his probation. Accordingly, he ordered that probation remain revoked and imposed the suspended sentence of imprisonment for the term prescribed by law.

This court has taken judicial notice of the fact that on November 6, 1981, appellant was acquitted of the rape charge in Marin County.[3]

### Discussion

*The denial of the motion for a continuance on the day of the revocation hearing was an abuse of discretion.*

▮ Appellant contends that the denial of the motion for a continuance on the day set for the probation revocation hearing was an abuse of discretion because defense counsel was admittedly unprepared to proceed. Counsel explained to the court on August 14, 1981, the date set for the hearing, that he was not prepared and went into considerable detail in explaining not only what had been taking up his working hours (a trial of a difficult case and in the week previous a homicide trial) but also what he believed he had to accomplish

---

[3]The minutes of the trial reflect that appellant testified in his own behalf, and that the jury deliberated for one hour and thirty-two minutes.

before he could proceed in a competent manner (e.g., reading the 150-page packet of materials including the 70-page preliminary hearing transcript, discussion with his client, reading his client's lengthy statement to his trial counsel, comparing the police report to the testimony given at the preliminary hearing and reviewing suggestions made by his client). Not one item in this recitation was disputed by the prosecutor or the trial court and the People do not dispute it here. Counsel was unprepared.

The People's response that defense counsel had time to prepare is irrelevant to a determination of whether in fact counsel was prepared. A criminal defendant is entitled to a prepared counsel, not merely to a counsel who had time to prepare.

The question is whether it is error to force an inadequately prepared counsel to proceed to represent his client.

As a starting point we emphasize that a probationer is entitled to representation of counsel at formal proceedings for the revocation of probation. (*People* v. *Vickers, supra,* 8 Cal.3d at pp. 461-462.) Recently the California Supreme Court held that the practice of submitting preliminary hearing transcripts at revocation hearings without a showing and finding of good cause violates the probationer's right both to confront and to cross-examine adverse witnesses. As to each right the holding was described as "compelled" by the prior holdings of the United States Supreme Court. (*People* v. *Winson* (1981) 29 Cal.3d 711, 715-717 [175 Cal.Rptr. 621, 631 P.2d 55], cert. den., 455 U.S. 975 [71 L.Ed.2d 688, 102 S.Ct. 1485].) As in *Winson,* the crucial testimony at issue in the instant case was that of the sole percipient witness to the alleged violation.

While the determination of whether a continuance should be granted rests in the discretion of a trial court, " 'that discretion may not be exercised in such a manner as to deprive the defendant of reasonable opportunity to prepare his defense. "That counsel for a defendant has a right to reasonable opportunity to prepare for a trial is as fundamental as is the right to counsel." [Citations.] ' " (*Jennings* v. *Superior Court* (1967) 66 Cal.2d 867, 875-876 [59 Cal.Rptr. 440, 428 P.2d 304]; accord *People* v. *Maddox* (1967) 67 Cal.2d 647, 652 [63 Cal.Rptr. 371, 433 P.2d 163].) Put plainly, when a denial of a continuance impairs the fundamental rights of an accused, the trial court abuses its discretion. (*People* v. *Locklar* (1978) 84 Cal.App.3d 224, 230 [148 Cal.Rptr. 322].) By denying a continuance to allow counsel to become prepared in the instant case, appellant's right to the effective assistance of counsel and his right to confront and cross-examine the sole adverse witness were denied even more effectively than by the process condemned in *Winson, supra,* 29 Cal.3d 711.

Recently this court reviewed a similar circumstance in *Hughes* v. *Superior Court* (1980) 106 Cal.App.3d 1 [164 Cal.Rptr. 721]. There, a public defender assigned to two complex criminal cases on the trial calendar refused an order to participate in jury selection in one case because he had devoted his time to the other case and hence was unprepared. Following denial of his request for a continuance he was found in contempt for persisting in his refusal to participate in the trial.

Although the procedural setting here differs from *Hughes,* the underlying trial court action was identical: ordering an unprepared counsel to proceed to trial. Counsel's response to this dilemma differed: in *Hughes,* counsel refused to proceed and was held in contempt whereas here, counsel proceeded under protest. But in each situation counsel's reason for asking not to be forced to proceed was the same: protection of his client's right to adequate representation.

In *Hughes,* we issued a writ of prohibition, explaining "[t]he trial court's error was in finding that there was insufficient reason or excuse for petitioner's refusal to obey the court's order to proceed with trial. The sufficient reason was the protection of his client's constitutional right to adequate representation at trial irrespective of the reason for inadequacy." (106 Cal.App.3d at p. 5.) Thus, *Hughes* established that "[t]o force an unprepared counsel to proceed to trial regardless of the reasons for the lack of preparedness would result in a violation of constitutional rights. '[I]t is a denial of the accused's constitutional right to a fair trial to force him to trial with such expedition as to deprive him of the effective aid and assistance of counsel.' [Citations.] If counsel had obeyed the court's order to proceed, his compliance would have denied his client a fair trial." (*Id.,* at p. 4.) That happened here.

The People's contention that appellant to obtain a reversal must affirmatively show it was reasonably probable probation would not have been revoked if the continuance had been granted is simply incorrect. Denial of fundamental constitutional rights is not excused by want of prejudice. (*People* v. *Linden* (1959) 52 Cal.2d 1, 33 [338 P.2d 397].) Indeed, in *People* v. *Winson, supra,* 29 Cal. 3d at page 719, the court did not bother to undertake any analysis of prejudice upon its finding that the probationer had been denied his right of confrontation at his revocation hearing.[4]

In light of our conclusion that the trial court prejudicially abused its discretion in denying the motion for a continuance, we need not address appellant's second contention: that holding a probation revocation hearing prior to trial on criminal charges stemming from the identical alleged misconduct violates the privilege against self-incrimination. (Cal. Const., art I., § 15; see *Prudhomme*

---

[4]We note in passing that some evidence of prejudice is that when the same matters were addressed by prepared counsel, at appellant's trial, appellant was acquitted.

v. *Superior Court* (1970) 2 Cal.3d 320, 326-327 [85 Cal.Rptr. 129, 466 P.2d 673]; *Allen* v. *Superior Court* (1976) 18 Cal.3d 520, 524, 526-527 [134 Cal. Rptr. 774, 557 P.2d 65]; *People* v. *Collie* (1981) 30 Cal.3d 43, 48 [177 Cal. Rptr. 458, 634 P.2d 534].)

Because the record before us is limited we express no opinion as to whether the trial court would have been justified in finding counsel in contempt for failing to be prepared. Nothing in this opinion restricts the inherent power of the trial court to impose substantial sanctions on an attorney who without just cause is unprepared to proceed at the time scheduled. Such sanctions can be ordered where justified without jeopardizing the right of the client-defendant to assistance of adequately prepared counsel.

Also we emphasize that nothing in this opinion should be read as intimating that a mere representation of unpreparedness is sufficient to require the trial court to postpone probation revocation proceedings—or any other hearings or trials.

The petition for habeas corpus is dismissed as moot. The order revoking probation is reversed.

Rattigan, Acting P. J., and Moscone, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.