Filed 3/11/15  P. v. McCowan CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>RAYMOND B. McCOWAN,<br><br>　　　Defendant and Appellant. | A138648<br><br>(San Mateo County<br>Super. Ct. No. SC071579A) |

　　　Defendant Raymond McCowan appeals from a judgment convicting him of assaulting his wife with a hammer and sentencing him to prison for 36 years to life. He contends that he received ineffective assistance of counsel and that the court erred in denying his motions for a continuance, substitution of counsel under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*), and a new trial. We shall affirm.

**Factual and Procedural History**

　　　Defendant was accused of committing three criminal offenses on February 8, 2010. Count one charged defendant with violating Penal Code section 273.5, subdivision (a),[1] by willfully and unlawfully inflicting on his spouse, Ladonna Christian, corporal injury resulting in a traumatic condition. The information alleged that in the commission of the offense defendant used a hammer, a deadly and dangerous weapon within the meaning of section 12022, subdivision (b)(1), and that the offense is a serious felony under section 1192.7, subdivision (c)(23). Count two charged that defendant

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

1

violated section 245, subdivision (a)(1), by assaulting Christian with a deadly weapon, a hammer, also a serious felony within section 1192.7, subdivision (c)(23). Attached to those counts were allegations of six prior offenses in San Francisco and San Mateo Counties in the period from 1982 to 1989. Count three charged defendant with a misdemeanor resisting arrest in violation of section 148, subdivision (a)(1).

The following evidence was presented at trial:

On February 8, 2010, General Manager Christopher Hill and Assistant Manager Jordan Austin were at work at the La Quinta Inn on Airport Boulevard in South San Francisco. When defendant was checking out of the hotel that afternoon, Hill testified that he was "aggravated," disputing $270 of telephone charges put on the bill in his absence by his wife and son, Raymal McCowan. When Hill gave defendant his receipt, he recognized that defendant was "still frustrated" and watched him as he exited.

Hill went from the front desk into the office, where he watched from the window as defendant walked from the front door of the hotel to his truck, parked about 50 feet away. Austin was seated at her desk and could see defendant's truck through the window. Both Hill and Austin saw defendant go to the truck and enter the driver's side. Both testified that defendant's wife was sitting in the front passenger seat and his son was sitting in the rear passenger seat.[2] Austin saw defendant gesturing at the woman with what she assumed was the hotel bill in his hand. She could not hear what was said, but defendant appeared to be yelling, his hands were "flailing" and his mannerisms indicated it was not a calm, quiet conversation. Hill also could not hear the couple, but described the "very animated conversation" as "definitely an argument" because of defendant 's shaking shoulders and the "gyration" of his head back and forth.

After a minute, both observers saw defendant get out of the truck and pull a "heavy cylindrical crowbar-esque type object" from the door, get back in and shut the door again. In the driver's seat, defendant pivoted and hit the female passenger forcefully

---

[2] Austin acknowledged on cross-examination that it was possible the woman was in the back seat, as she told the 911 dispatcher.

between 10 to 20 times. Hill could not see the object making contact, but saw the victim's frantic movements in reaction. Austin also did not see the metal object strike the victim, but the way she was "cowering" made Austin sure defendant was "absolutely beating her."

Hill left the office to get the license number of the truck while Austin called 911. After defendant stopped hitting his wife, defendant delayed "a minute or so" before starting his truck. As defendant was exiting the parking lot, he stopped the truck and spoke briefly to two transients walking through the lot.

South San Francisco Police Officers Kathleen Walsh and Matthew O'Connor responded to a report of a male beating a female in a Chevy Avalanche that had just left the La Quinta Inn parking lot. They were the first to encounter defendant driving on Airport Boulevard near the Grand Avenue on-ramp. Walsh turned on her patrol vehicle's red light and defendant pulled over on the on-ramp. Walsh could see a male driver and a female passenger Defendant was ordered out of the car and handcuffed. In searching defendant's car, officers found a hammer on the floorboard under the driver's seat.

O'Connor testified that Christian was in the back seat when he approached the truck. He saw scrapes on Christian's forearms and fresh blood spots on her pants. She looked "visibly shaken," and her eyes were watering. Limping with a "severe slouch" to one side, she walked "with great difficulty" about ten feet to a concrete median wall and leaned against it, shaking the whole time. Asked if she needed medical assistance, she said she did not, but O'Connor nonetheless called a paramedic based on the circumstances and the injuries he observed. O'Connor did not observe any signs that Christian was under the influence of alcohol at the scene or at the police station.

Walsh testified that Christian's left forearm was "bleeding pretty good" and she had a couple of circular imprints on her velour pants. Christian would not answer any questions about the cause of her injuries but did allow Walsh to photograph her injuries. The photographs show scrapes on her left forearm all the way down to her wrist, not a single scratch but multiple abrasions with points of redness where she was still bleeding. From Walsh's training and experience responding to assaults, those appeared to be

3

defensive wounds of the type occurring when a person being attacked brings their arms up to protect their face and head. Walsh saw and photographed at least two injuries on Christian's left thigh that bore a circular imprint with a crisscross waffle pattern the same size and shape as that on the head of the hammer found in the truck. These injuries also matched the pattern imprinted on Christian's pants.

San Mateo County's lead forensic nurse practitioner Diana Emerson did not examine Christian but reviewed the reports, the photographs of Christian's injuries, and the hammer. She testified that the abrasions on Christian's left forearm appeared to be defensive injuries. The injuries to Christian's leg were pattern injuries which result when the force and velocity of blows are strong enough to imprint on the person's skin or clothing the crisscross pattern of the instrument with which the person was struck. The size and shape of the pattern were congruent with the head of the hammer.

Evidence was also introduced regarding an incident that occurred in San Francisco on the night of March 11-12, 2011. In that incident, police officers responded to a domestic violence call at defendant's residence and found Christian naked, crying, and "bleeding from her face." To the responding officer, it looked like "some object or something had gauged out little sections of her cheeks." Christian was taken to San Francisco General Hospital. Defendant was arrested and convicted of felony charges arising out of that domestic violence.

Raymal McCowan testified in his father's defense. He claimed that when his father returned to the truck from paying the hotel bill, he did not raise his voice to his mother, and did not strike her with a tool, crowbar or the hammer that his father kept in the back of his truck. He explained that his mother has problems with alcohol and drugs and that on the night of February 7, she was drinking and "wobbling." That night she fell a number of times and injured herself while they were returning from dinner. On cross-examination, Raymal did not remember testifying at the preliminary hearing that his mother injured her leg at the hotel when she fell on some ice. Raymal also testified that his mother did not fall in a bush while walking to his father's truck that morning.

4

It was stipulated that, in spite of defense counsel's due diligence, Christian was unavailable to testify, so her testimony at the preliminary hearing was read into the record pursuant to Evidence Code section 240, subdivision (a)(5). In that testimony, Christian claimed that she had been drinking on February 8, 2010, and that she injured her arm when she slipped and fell into the bushes on her way to the truck. She hurt her leg the night before when she fell on some ice in the hotel room. She denied arguing with defendant that day. She did not know if defendant had a hammer, nor did she see him holding one or striking with anything in the car that day. Defendant did not hit her, and she never screamed in the car.

The jury found defendant guilty on counts one and two and not guilty on count three. Thereafter, the court found the prior felony convictions true. Defendant was sentenced on count one to the three- strikes term of 25 years to life. A second 25-year-to-life term was imposed on count two but stayed pursuant to section 654. The court also imposed two 5-year enhancements pursuant to section 667, subdivision (a), for defendant's prior convictions and an additional year for the weapon use, for a total of 36 years to life. Defendant timely filed a notice of appeal.

**Discussion**

1.      *Ineffective Assistance of Counsel*

Defendant contends that his trial counsel rendered ineffective assistance in failing to obtain and use the transcripts from defendant's trial on the domestic violence charges arising out of the March 2011 incident. He argues that many of the same witnesses testified in both trials so that the transcripts from the earlier trial could have been used to impeach critical prosecution witnesses in the present action. He also argues that the transcripts would have alerted counsel to the need for a defense injury expert. We need not determine whether counsel's performance was deficient in this regard, as the failure to obtain the transcript was not prejudicial. (*Strickland v. Washington* (1984) 466 U.S. 668, 697 ["[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's

5

performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."].)

Defendant argues the transcript could have been used to impeach Hill with his testimony at the prior trial that on the occasion relevant in this trial he saw defendant hit the victim "at least six" times, that defendant waited "at least three or four minutes" before starting to drive away, and that he stopped to talk to the transients for "a minute or two" before leaving the parking lot. However, there is no material difference between Hill's prior testimony and his testimony in the current trial that he thought defendant hit the victim between 10 and 20 times, that defendant waited a "minute or so" before starting to drive and that he stopped to talk to the transients for "another minute or so." There is no likelihood that bringing out such trivial inconsistencies would have resulted in a more favorable outcome for defendant.

Neither are there any material differences between the arresting officers' prior testimony and their testimony in the present trial. Walsh testified in the present case that when she stopped defendant's truck, the "back window was slightly tinted, but it was daylight and [she] could see inside." In the earlier trial, she testified that the windows were tinted and she could see through the tint. The absence of the qualifier "slightly" in the prior testimony is not material and any failure to impeach with this testimony is certainly not prejudicial. O'Connor testified previously that the abrasions on Christian's arm were "possibly" consistent with her falling into a bush. In the present trial O'Connor testified that Christian had not mentioned falling into a bush and that the wounds on her arm "might have been minutes old, perhaps hours old." Although he was not asked whether her arm wounds were consistent with falling into a bush, nothing in his testimony suggested they were not. Indeed, even the prosecution's expert witness acknowledged the arm wounds could have been caused by falling into a bush.

Finally, based on the record before us, there is no likelihood that testimony by an injury expert for the defense would have resulted in a more favorable outcome for defendant. Defendant argues that an expert would have opined, as one did in support of his motion for a new trial, that "Christian's forearm abrasions were unlikely to have been

6

from a hammer, and more likely have to have been from a fall into the bushes (as Christian described)." As noted above, no one disputed that the injuries to Christian's arms were possibly consistent with falling into a bush. Expert testimony was not necessary to establish that fact. More importantly, the relevance of the injuries to Christian's arms was minimal, in contrast to the significance of the injury to her leg. The undisputed evidence established that the waffle pattern of the injuries on Christian's leg was consistent with the waffle pattern on the hammer found in defendant's truck. Even the defense expert whose declaration was submitted in support of defendant's new trial motion opined that Christian had "a patterned abrasion consistent with the head of the hammer shown in the photographs" and agreed with the prosecution's expert that the injuries "were high impact . . . , which is also consistent with the velocity that may be applied by a hammer." The defense expert's opinion that the thigh injuries could have occurred two to three days before they were photographed does not necessarily corroborate Christian's testimony at the preliminary hearing that she suffered the injuries in a fall the night before. As the expert explained, "[t]he fall described by Ms. Christian in the hotel room or the multiple falls between the restaurant and the hotel as possible events from which this injury occurred, but the pattern would need to be matched to an item in the room or on the path and a better description of the fall would be necessary to determine if it was consistent with the abrasion." Christian's explanation was largely unreliable and was refuted by O'Connor's testimony that he searched the hotel after the incident but was unable to find any hard object with a similar waffle pattern that might have caused the injuries.

Accordingly, defendant's claim of ineffective assistance of counsel based on his trial attorney's failure to obtain and use the transcript from the prior trial fails for lack of any possible prejudice.

**2.      *Motion for Continuance***

Defendant contends the trial court wrongly denied his motion for a continuance of the trial. The original trial date in this action was vacated because defendant was in custody in San Francisco following the March 2011 incident. Following defendant's

7

conviction and sentencing in May 2012, defendant's attorney in the San Francisco case was relieved and attorney Jeffrey Hayden was appointed to represent defendant. On August 17, 2012, Hayden's unopposed motion for a continuance was granted. Trial was set for October 15, 2012.

On October 15, 2012, Hayden made a motion before the criminal presiding judge for an additional continuance. He explained that he had only been appointed in July 2012 and that until that time no investigation had been conducted in what was then a two-year old case. He had been trying since August to locate potential witnesses, including Christian, but had been largely unsuccessful. Recently, however, his investigator had tracked down two potential witnesses and he needed the continuance to complete that investigation. The presiding judge denied the motion on the ground that two months was "more than ample time" to have found the potential witnesses and assigned the case to a courtroom for trial.

That afternoon, Hayden renewed his request for a continuance before the trial judge. He reiterated that he had been appointed only three months earlier and had received an incomplete file. He explained that because most of the witnesses were either transients or hotel guests it was very difficult to locate them two years after the incident. He indicated, however, that he had "reason to believe" that his investigator will find two potential witnesses "in reasonably short stead" because the investigator had obtained a phone number for one of the witnesses through a housing services agency and the investigator was in contact with that witness's family. With respect to the relevance of these witnesses, he stated: "One of the witnesses had called Mr. McCowan . . . the night before to alert him to . . . not only the fact that the victim had been injured that she had been in a fight the night before with other guests at the hotel, but also to her drunkenness the night before . . . . [¶] One of the witnesses . . . would have been in a position to observe that and would be a percipient witness for the defense." The trial judge also denied the continuance, noting that the case had been on the trial calendar for two months and the criminal presiding judge had also denied the request for a continuance earlier that morning.

Defendant contends the trial judge abused his discretion in denying defendant's October 15 motion for continuance. "A continuance in a criminal case may be granted only for good cause. (§ 1050, subd. (e).) Whether good cause exists is a question for the trial court's discretion. [Citation.] The court must consider ' " 'not only the benefit which the moving party anticipates but also the likelihood that such benefit will result, the burden on other witnesses, jurors and the court and, above all, whether substantial justice will be accomplished or defeated by a granting of the motion.' " ' " (*People v. Doolin* (2009) 45 Cal.4th 390, 450.) "A reviewing court considers the circumstances of each case and the reasons presented for the request to determine whether a trial court's denial of a continuance was so arbitrary as to deny due process. [Citation.] Absent a showing of an abuse of discretion and prejudice, the trial court's denial does not warrant reversal." (*Ibid*.)

Initially, we reject defendant's argument that the trial judge failed to exercise his independent judgment in denying the continuance. Although the trial judge cited the presiding judge's order in explaining his ruling, his decision was not, as defendant suggests, based "entirely" on the presiding judge's decision. The trial judge indicated that he was in agreement with the conclusion of the presiding judge that two months was adequate time to have investigated this case.

A party who seeks a continuance to secure the attendance of a witness must show that he has exercised diligence to secure the witness's attendance, that the expected testimony by the witness is material and not cumulative, that the witness can be obtained within a reasonable time, and that the facts to which the witness will testify cannot otherwise be proven. (*People v. Jenkins* (2000) 22 Cal.4th 900, 1037.) Here, although Hayden claimed that he was diligently searching for the witnesses and thought his investigators had a lead on one or two potential witnesses, he failed to show that these witnesses could be obtained within a reasonable time. Moreover, defense counsel's argument did not indicate that these witnesses would provide significant, non-cumulative testimony. Defendant did not assert that the witnesses saw the incident in question. He indicated only that they might be able to corroborate Christian and Raymal's testimony

9

that Christian was drunk the night before and suffered some injuries as a result of a fall that night. In light of the marginal relevance of such testimony, the trial court's denial of defendant's request for a continuance did not exceed "the bounds of reason, all circumstances being considered." (*People v. Froehlig* (1991) 1 Cal.App.4th 260, 265.)

Finally, even assuming the court should have granted the continuance, defendant fails to show that he was prejudiced by the absence of these witnesses at trial. (*People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1549, citing *People v. Watson* (1956) 46 Cal.2d 818, 836 [to establish prejudice, a defendant must show that if the continuance had been granted, a more favorable outcome probably would have resulted].) Defendant does not offer any argument in his opening that he suffered any prejudice as a result of the absence of these witnesses. Rather, he suggests that the denial of the continuance prevented his attorney from locating Christian, hiring an expert, and preparing Raymal for his testimony. He argues that by forcing his attorney to trial when he was inadequately prepared, the court violated his federal constitutional rights to a fair trial and effective representation of counsel. (*People v. Fontana* (1982) 139 Cal.App.3d 326, 332-333.) Hayden, however, did not seek a continuance based on his general lack of preparedness. To the contrary, Hayden specifically stated that "if there was no likelihood of reaching these two witnesses, I wouldn't be making the motion." Thus, the record fails to support defendant's claim that the denial of the continuance forced Hayden to participate in a trial for which he was not prepared.

**3.** *Marsden Motion*

Following the denial of the motion for a continuance, defendant made a motion for substitution of appointed counsel. In written briefing, defendant faulted Hayden for refusing to file a motion attacking his prior counsel and accused Hayden of "advocate[ing] for the prosecution" by encouraging him to waive time before trial. He also claimed that Hayden's investigator had not interviewed defendant until September 24, three weeks before trial. At the hearing, defendant claimed Hayden had not given him copies of the defense files he had requested and challenged Hayden's refusal to file

10

*Romero*[3] and *Pitchess*[4] motions. He repeatedly claimed that Hayden was not prepared for trial, noting that he sees Hayden only on and around court dates. Finally, defendant challenged Hayden's failure to oppose a motion to amend the complaint that had been made and granted that morning.

In response, Hayden admitted that he had not seen defendant since late August, but explained that he had visited the jail on several occasions, including at least once with the investigator, and been told that defendant was not available because he was in the law library. With respect to defendant's concern about the investigation, Hayden explained that he was doing what he could. He noted that although his investigator had not met with defendant until three or four weeks before trial, he had begun working on the case before then. There were "additional things to do" and meeting with defendant was not "his first stop." He explained that a *Pitchess* motion was not appropriate because the percipient witnesses were the key to the case, not the peace officer witnesses, and that the time to file a *Romero* motion is before sentencing, not before trial. In response to a question by the court, counsel clarified that the amended information was not objectionable because it merely corrected a mischarged prior conviction from the initial information.

The court denied the motion on the basis that counsel was "a very experienced defense attorney" and his analysis of the appropriate nature and timing of motions was correct. The court concluded that there had been no "ineffective assistance of counsel nor a denial of due process" based on the record before the court. As the courtroom was being reopened, defendant stated, "Excuse me, your honor. There was one thing else and it just dawned on me when I was looking at the paper. As far as the expert witness, you know, the prosecution has a witness who came and testified to some photos that was taken. No medical reports or none of that. I don't even have an expert witness to, you know, to deny whatever statements were made. And I was asking him about that part of it too. I mean, you know, they have someone who's already taken the stand and testified that, you know,

---

[3] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

[4] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

11

injuries that they seen from a photo were sustained from the time I came back which 30 minutes . . . ." The court interrupted defendant and advised him to be "guarded" in what he says because the courtroom was already open. The court added, "If there is further motion with regard to an expert witness, that's something that we can hear at a later time . . . and it's something that of course your attorney can bring up as a motion or in response to a motion." Defendant responded, "Okay."

Defendant contends the court erred by failing to make the required inquiry into his stated concerns and by concluding that Hayden's representation was adequate. We review the denial of a *Marsden* motion for an abuse of discretion. Denial of the motion is not an abuse of discretion " ' "unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel." ' " (*People v. Streeter* (2012) 54 Cal.4th 205, 230.) "A defendant is entitled to relief if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citation]." (*People v. Crandell* (1988) 46 Cal.3d 833, 854, overruled on other grounds in *People v. Craytor* (2002) 28 Cal.4th 346, 364–365.)

Contrary to defendant's assertion, the court's inquiry into defendant's complaints about Hayden's representation was sufficient. Defendant faults the court for failing to inquire into defendant's "complaints that Mr. Hayden was advocating for the prosecution; not providing any defense and not prepared for trial; not providing [defendant] with critical documents; and not consulting an injury expert." As discussed above, the court inquired about the assertion that Hayden was helping the prosecution by not opposing the amendment of the information. Although the court did not specifically address defendant's claim that Hayden had urged him to waive time for the benefit of the prosecution, no inquiry was necessary as the waiver was clearly necessary in light of his requests for continuances. The court had no opportunity to inquire as to defendant's comments regarding the expert witness as the motion had already been denied and the courtroom reopened. Following his comments quoted above, defendant did not raise the

12

issue again that day. Finally, nothing in defendant's comments indicated a substantial breakdown in the attorney-client relationship so that there was no need to inquire into "the possibility of an irreconcilable conflict." Rather, it appeared from defendant's comments that he was concerned about the adequacy of Hayden's investigation and some of his strategic decisions, but these concerns were sufficiently addressed by counsel and the court.

Defendant's reliance on *People v. Munoz* (1974) 41 Cal.App.3d 62 is misplaced. In that case, the defendant complained to the court that his counsel did not want to defend him and he requested appointment of substitute counsel. These complaints raised the issue whether defense counsel had become so convinced of the defendant's guilt that he was unable to defend him vigorously. (*Id*. at pp. 64–65.) Despite such serious allegations, the court did not conduct a *Marsden* hearing and it made no inquiry at all of the defendant or his counsel. (*Id.* at pp. 65–66.) The appellate court held that the trial judge's "ruling denying appellant's request for a substitution of attorneys, without an inquiry into the state of mind of the court-appointed attorney and without attempting to ascertain in what particulars the attorney was not providing appellant with a competent defense was tantamount to a refusal on the part of the court to adjudicate a fundamental issue." (*Id*. at p. 66.) In contrast, as discussed above, the trial judge in this case did inquire into defendant's concerns and expressly concluded that the counsel was providing adequate representation.

The court's conclusion that counsel was providing adequate representation is not, as defendant suggests, undercut by an "admission" by Hayden that he was unprepared and had not conducted an adequate investigation. Counsel did not make any such admission either at the *Marsden* hearing or in requesting a continuance. Taking all of counsel's comments into consideration, including those made in support of the October continuance motion, the record establishes that while he would have preferred a continuance to locate the two potential witnesses and conduct additional investigation, he was otherwise prepared to go to trial.

Likewise, the record does not support defendant's assertion that the trial court improperly relied on "the court's courtroom observations and previous experience with, and confidence in, Mr. Hayden." The court's observations that he knew Hayden to be a very experienced attorney was but one part of the court's explanation for denying the *Marsden* motion. Defendant's reliance on *People v. Hill* (1983) 148 Cal.App.3d 744, 753–755, is entirely misplaced. In *Hill*, the trial court did not make an inquiry into the defendant's complaints concerning counsel but improperly relied exclusively on the court's prior experience with the attorney to summarily deny defendant's *Marsden* motion. Here, as described above, the trial court did not summarily deny defendant's *Marsden* motion based simply on the court's prior experience with Hayden.

**4.** ***Prosecutorial Misconduct***

Following defendant's identification by a witness at trial, counsel asked if the record could reflect that defendant was holding a pencil in his left hand and had been taking notes with that hand. The court agreed the "record will so reflect." Defense counsel did not object. On appeal, defendant contends that the prosecutor's request constituted misconduct because it diluted the requirement of proof beyond a reasonable doubt and violated his rights to due process and to avoid self-incrimination. Acknowledging that his attorney did not object, he also asserts that the failure to object constituted ineffective assistance of counsel.

Defendant cites *Courson v. Florida* (Fla.App. 1982) 414 So.2d 207, 208, in which the court observed that "it is inappropriate for a prosecutor to attempt to transform his own, often unshared, courtroom observation into an evidentiary fact" by asking that the record reflect that defendant was writing with his left hand in court. However, the court in that case also found no prejudicial error, explaining "that the prosecutor could have sought by appropriate means to prove the undisputed issue of the defendant's left-handedness (for example, by requesting the court to have the defendant demonstrate this physical characteristic in the jury's presence) without implicating, much less offending, any right of the defendant not to incriminate himself." (*Ibid.*, fn. omitted; see also *People v. Davis* (2009) 46 Cal.4th 539, 611-612 [forced in-court display of defendant's tattoos

14

does not violate due process]; *People v. Sims* (1976) 64 Cal.App.3d 544, 552 ["the privilege against self-incrimination 'offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture.' [Citations] Forced exhibition of 'real or physical' evidence, such as of a physical characteristic, does not constitute a fundamental unfairness which is a violation of due process, and the voice 'is merely another identifying physical characteristic.' "].) A defendant's left-handedness is not meaningfully different from his voice or gait. Given that the evidence could have been introduced in another, undoubtedly more time-consuming way, it is likely that counsel made a reasoned decision not to object for that reason. In any event, the failure to object was certainly harmless.

**5.**     *New Trial Motion*

Defendant submitted a new trial motion alleging ineffective assistance of counsel on five grounds: (1) failure to assert statutory speedy trial rights; (2) failure to obtain the transcripts of the prior San Francisco trial; (3) failure to investigate the case; (4) failure to consult with an injury expert; and (5) failure to bring a motion to dismiss pursuant to section 1118.1 concerning the priors. The trial court denied the motion in its entirety.[5]

Defendant contends the court erred in failing to rule on his claim that the failure to retain an injury expert amounted to ineffective assistance of counsel. He argues that the court's "failure to rule on this issue constitutes error requiring reversal and a remand." The court did, however, rule on defendant's motion and implicit in the denial of the motion is a finding that the alleged failure to consult an injury expert did not amount to prejudicial ineffective assistance of counsel. (*People v. Carpenter* (1999) 21 Cal.4th 1016, 1046 [" 'An order is presumed correct; all intendments are indulged in to support it on matters as to which the record is silent, and error must be affirmatively shown.' [Citation.] We must 'view the record in the light most favorable to the trial court's ruling

---

[5] In denying the motion the court commented on the first three alleged instances of ineffective assistance but did not refer expressly to the fourth and fifth grounds.

and defer to its findings of historical fact, whether express or implied, if they are supported by substantial evidence.' "]; *Jie v. Liang Tai Knitwear Co.* (2001) 89 Cal.App.4th 654, 666–667 ["Implicit in the order denying the motion for a new trial is a finding that the declarant was not credible. [Fn. omitted.] Such an implicit finding is sufficient to support the trial court's order denying the motion for a new trial."].)[6]

In any event, defendant was not prejudiced by the lack of an express finding. As discussed above, at most, a defense injury expert would have offered testimony supporting Christian's claim that the scratches on her arms were caused by her fall into the bushes and were not defensive wounds caused by the claw of the hammer. This testimony, however, would not have contradicted the expert testimony that the waffle pattern injuries on Christian's leg were consistent with the hammer found in defendant's truck and the eyewitness testimony that defendant struck Christian repeatedly with a hammer-like object. There is no reasonable likelihood that defendant was prejudiced by the absence of expert testimony, and the court did not abuse its discretion in rejecting defendant's claim of ineffective assistance of counsel in denying the motion for a new trial.

**Disposition**

The judgment is affirmed.

---

[6] Defendant's reliance on *People v. Braxton* (2004) 34 Cal.4th 798 is misplaced. In that case, the court held that a defendant is entitled to a new trial "when the trial court has refused to hear or neglected to determine a defendant's motion for a new trial" upon a showing "that the defendant's new trial motion was meritorious as a matter of law, or the record shows that the trial court would have granted the new trial motion and the reviewing court properly determines that the ruling would not have been an abuse of discretion." (*Id.* at p. 817.) The trial court did not refuse to hear or neglect to determine defendant's motion in this case.

16

_____
Pollak, Acting P.J.

We concur:


_____
Siggins, J.


_____
Jenkins, J.