Filed 8/10/15  P. v. Griffith CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>KIM GRIFFITH,<br><br>　　　Defendant and Appellant. | B256853<br><br>(Los Angeles County<br>Super. Ct. No. PA075765) |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County, David B. Gelfound, Judge.  Affirmed.

　　　　Gideon Margolis, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　　Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Timothy M. Weiner and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Kim Griffith appeals her conviction of one count of grand theft by embezzlement (Pen. Code, § 487, subd. (a)), asserting that the trial court erroneously denied her continuance request. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. The Transactions

Kim Griffith was the primary cashier from 2009 through 2011 for Kramar Iron & Metal, a metal recycling business. Griffith worked in the front office with Melanie Becerra, the office manager, and Maria Mendoza, the office assistant. At Kramar Iron & Metal, non-industrial customers drive their vehicle onto an automated scale before and after depositing material. A cashier manages this process through "ROM," a software program that stores transaction information and calculates the value of the deposited material. The cashier pays the calculated amount to the customer in cash and receives the customer's signature on a receipt. At the end of the day, the cashier places the register's remaining money alongside the receipts in a safe for reconciliation the following business day.

In November 2011, after noticing a suspicious transaction in ROM, Becerra conducted a comprehensive audit of transactions. Because ROM records the time and nature of each action, the review permitted a detailed look into the history of all transactions. The audit exposed 195 fraudulent transactions, resulting in a loss of $74,512. Although all three front office employees had access to ROM through their own distinct usernames and passwords, Griffith's user account authored each fraudulent transaction. Griffith was working alone when 83 percent of these transactions ended, and most of the remaining 17 percent occurred when either Becerra or Mendoza were on vacation.

Through the audit, Becerra discovered three types of fraudulent transactions. One method, encompassing 48 transactions, involved manual adjustment of the final weight of customer Marco Guerrero's vehicle. By grossly understating the vehicle's actual weight, the manual adjustment resulted in overpayment. Another method, recorded under several

2

customer names, calculated the weight of Guerrero's vehicle when it was only partially on the scale.  The third method, consisting of 84 transactions on Saturdays when Griffith was working alone, generated fictitious customers by manually adjusting the weight of an empty scale.

2. The Preliminary Hearing

Griffith was charged with grand theft by embezzlement.  (Pen. Code, § 487, subd. (a).)  At the preliminary hearing, the prosecution called Becerra as a witness.  Becerra detailed the cashier process for customer transactions, and testified that upon payment, the customer signs a receipt that the company retains for accounting and customer contact purposes.  Despite Becerra describing the retention of receipts in both direct and cross-examination, counsel did not inquire about their continued existence after the hearing.

3. The Trial

At trial, Griffith's counsel questioned Becerra about the lack of evidence showing a verifiable company loss from the fraudulent transactions.  In response, Becerra described receipts that were not in evidence at that time.  Becerra brought 195 receipts to court the following day.  Over Griffith's objection, the court admitted the receipts into evidence.  The court reasoned that admission was proper because the evidence was not previously in the prosecution's possession and declined the drastic remedy of exclusion. The court, however, permitted Becerra to be recalled in five days so that Griffith's counsel could review the receipts.  Griffith's counsel requested more time to assess the evidence and moved for a 30-day continuance.  The court denied the motion.

On the morning that Becerra was recalled, Griffith's counsel requested a two-week continuance.  Counsel explained he wished to obtain a handwriting expert who could analyze the receipts' signatures.  The trial court denied the motion, noting the burden of mid-trial delay and the prosecution's decision not to offer evidence that the signatures belonged to Griffith.  A jury convicted Griffith as charged. Griffith appeals.

# DISCUSSION

Griffith claims the trial court abused its discretion in denying her mid-trial motion for a continuance and thereby deprived her of due process, effective assistance of counsel, and a fair trial. A court grants a continuance only upon a showing of good cause. (Pen. Code, § 1050, subd. (e).) The trial court has broad discretion to determine whether good cause exists. (*People v. Doolin* (2009) 45 Cal.4th 390, 450.) A reviewing court reverses the denial of a continuance only upon a showing of abuse of discretion and prejudice. (*People v. Zapien* (1993) 4 Cal.4th 929, 972.)

A moving party establishes good cause by demonstrating, among other things, due diligence in preparing for trial and the materiality of the expected testimony. (*People v. Jenkins* (2000) 22 Cal.4th 900, 1037.) Under this standard, Griffith failed to establish good cause for a continuance. First, Griffith's counsel failed to show an adequate level of due diligence prior to trial. During the preliminary hearing, Becerra testified about the retention practices for receipts. Referring to receipts on separate occasions, Becerra described how "they're all compiled . . . and they're stored in an envelope" and "[w]e do keep the receipt . . . ." However, counsel did not seek discovery of the receipts prior to trial, contending now there was no reason to believe receipts remained in existence.

Relying on *People v. Fontana* (1982) 139 Cal.App.3d 326, Griffith argues that the additional evidence left her unprepared. In *Fontana*, counsel, burdened by recently completed cases, was unable to read preliminary hearing testimony prior to trial. (*Id*. at p. 331.) The court reversed the trial court's denial of the continuance. (*Id*. at p. 334.) Here, unlike the circumstances that left counsel in *Fontana* unprepared, Griffith's counsel was present during the preliminary hearing and had an opportunity to discover the receipts prior to trial.

Second, Griffith failed to demonstrate the material impact of the expected testimony. Griffith argued that the testimony would be material because an expert could find the receipt signatures matched another employee's handwriting. Griffith pointed out that other employees used her workstation and could discover her ROM password.

4

Although access to Griffith's workstation was not well protected, the process and documentation underlying each transaction left little doubt as to her involvement. A transaction involved three actions: finalizing a record within ROM, removing cash from the register, and placing the printed receipt within the safe. Each action had to be completed on the same day. Additionally, each action had to be completed within the front office due to the physical location of the ROM computers and cash register. Because the fraudulent activity persisted for two years, these limitations required an actor's presence within the front office throughout that time period. ROM's transaction history and employee time sheets demonstrate that Griffith was present for each fraudulent transaction while her front office co-workers were routinely clocked-out. The requisite process for completing a transaction and Griffith's presence in the front office during the fraudulent activity through her ROM user account, made it infeasible for another employee to have generated fraudulent transactions without her support. As a result, any testimony by a handwriting expert would not dispel the extensive evidence linking her to the fraudulent activity. Because Griffith failed to demonstrate good cause to delay the trial, the trial court did not abuse its discretion in denying the requested continuance.

Finally, Griffith fails to demonstrate she was prejudiced by the denial of her motion. To establish prejudice, a defendant must show that in the absence of the claimed error a more favorable result was reasonably probable. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) As discussed above, expert testimony on the receipts' handwriting would not have tended to create doubt as to Griffith's involvement because detailed record keeping documented that the timing of fraudulent transactions uniquely overlapped with Griffith's schedule. In the absence of any evidence that handwriting analysis could produce a material effect, Griffith has not established that the denial of a continuance was prejudicial.

## DISPOSITION

The judgment is affirmed.

ZELON, Acting P. J.

We concur:

SEGAL, J.

STROBEL, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.