Filed 2/3/25  P. v. Givens CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DENNIS LEE GIVENS,<br><br>    Defendant and Appellant. | B330497<br><br>Los Angeles County<br>Super. Ct. No. BA503269 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gustavo N. Sztraicher, Judge.  Affirmed.

Joanna Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Dennis Lee Givens asks us to reverse his conviction for human trafficking and order a new trial. We affirm. Statutory citations refer to the Penal Code.

I

In September 2020, Givens, using the dating app "Tagged," matched with J.C., a woman around 20 years his junior, who was 20 years old at the time. J.C. and Givens had met several years before, when J.C. was a child, because their mothers used to be best friends.

After matching on the app, J.C. and Givens saw each other every day. J.C. then began to work as a prostitute because Givens told her he "didn't want to be broke." J.C. had never done commercial sex work before, so Givens taught her what she needed to do and imposed "ground rules" he required her to follow. Givens set quotas for J.C. to meet every night and would have "an attitude" if she failed to meet his quotas. J.C. gave all of her prostitution earnings to Givens "because he wanted all of it." When Givens was displeased with J.C., he would take away her phone and ID cards, yell at her, and threaten her. Givens hit J.C. in the face at least three times, inflicting a cut lip, a black eye, a swollen nose, and swollen cheeks.

In February 2022, J.C. called her mother, Almasita Cruz, and "vented" to her about working for Givens. J.C. told Cruz she was tired of sex work and felt like she was "losing herself." Soon afterwards, Cruz called the Los Angeles Police Department to ask them to help J.C. The police officers found J.C. in Hollywood and took her to the police station to interview her. After reviewing photos and text messages on J.C.'s phone, the police arrested Givens.

The prosecution charged Givens with one count of human trafficking, in violation of section 236.1(b). The charging document included allegations of aggravating factors under Rules 4.421(b)(2) and (b)(3) of the Rules of Court: that Givens's prior convictions as an adult were numerous or of increasing seriousness; and that Givens served a prior term in prison or county jail under section 1170(h).

Givens pleaded not guilty. The court initially set trial for October 2022, but granted two of Givens's motions to continue the trial to February 2023.

In February 2023, all parties announced they were ready for trial. However, just before the trial date, counsel learned from Givens's mother, Veronica Gray-Mcrae, that Cruz had a criminal history. The prosecution had represented to counsel that Cruz had no convictions. When counsel provided the other names Cruz had used, the prosecution was then able to give counsel Cruz's full criminal history. Cruz's priors included the following: (1) a 1985 conviction for aggravated robbery in Arizona; (2) a 2004 misdemeanor conviction for welfare fraud; (3) a 2008 felony conviction for insurance fraud; and (4) a 2009 felony conviction for forgery.

Defense counsel moved for another continuance to investigate Cruz's criminal history. Her reasons were twofold. First, she argued she could use the convictions to impeach Cruz. Second, she believed the convictions were relevant to her defense of Givens, which rested on a theory that J.C. and Cruz wanted to keep Givens in custody to get control of Givens's property and retaliate against Givens because Gray-Mcrae denied Cruz's request for a loan. Both J.C. and Cruz had applied for federal Paycheck Protection Program loans, and Givens believed they

had done so fraudulently. Counsel argued Cruz's convictions were relevant because they showed a "pattern of fraud" and supported her theory that Cruz and J.C. had falsely accused Givens for their own financial gain.

The prosecution did not oppose Givens's continuance motion. However, the court denied it, reasoning that "the whole theory is so speculative." The court expressed its doubt that Cruz's 2004, 2008, and 2009 convictions were relevant to proving the defense theory that Cruz had a pattern of dishonesty and therefore, a motive to lie about Givens for financial gain. The court also noted that counsel admitted to harboring her defense theory for several months before asking for this continuance.

The prosecution then asked the court to exclude all of Cruz's criminal history because "it's way too attenuated." Defense counsel objected, arguing all four of Cruz's convictions were relevant to her defense theory.

The court found Cruz's three oldest convictions were too remote to indicate anything about her credibility. Each of these convictions had little probative value in relation to the risk of misleading the jury, confusing the issues, and unduly consuming time. However, the court found Cruz's 2009 forgery conviction to be admissible, as it was "marginally probative." The court also found that admitting all four of Cruz's priors would be "cumulative."

Givens's trial took six days. Seven witnesses testified for the prosecution including J.C., Cruz, and five law enforcement officials who had investigated the case. Gray-Mcrae testified for Givens. After about two hours of deliberation, the jury returned a guilty verdict.

4

Givens had waived his right to a jury trial on the aggravating factors under Rule 4.421(b) so the court proceeded to a bench trial for this portion of his case. Givens waived his right to testify and admitted the following: (1) a 2009 conviction for pimping for which he served a prison term; (2) a 2007 forgery conviction; (3) a 2003 conviction for unlawful transportation of marijuana; and (4) a 2003 conviction for buying or receiving a stolen car.

At sentencing, the court found the aggravating factors outweighed any mitigation and sentenced Givens to the upper term of 20 years for his human trafficking conviction.

## II

On appeal, Givens claims the trial court made three errors: denying the motion to continue to investigate Cruz's criminal history; excluding three of Cruz's four prior convictions; and imposing the upper term for his human trafficking conviction. We reject his claims.

## A

Our review is deferential. (See *People v. Sakarias* (2000) 22 Cal.4th 596, 646 [motions to continue]; *People v. Clark* (2011) 52 Cal.4th 856, 931–932 [admissibility of prior criminal history for impeachment]. We reverse only if the court erred in a manner that prejudiced Givens under the standard in *People v. Watson* (1956) 46 Cal.2d 818, 836–837. (See *People v. Robinson* (2005) 37 Cal.4th 592, 627; *People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1542.)

There are no errors of this sort.

As to Givens's first point, the trial court's decision to deny his motion to continue was a proper exercise of discretion. Givens correctly points out that the court's exercise of discretion

5

must not deprive defendants of the reasonable opportunity to prepare their defense.  (See *People v. Fontana* (1982) 139 Cal.App.3d 326, 333.)  In this case, Givens had ample opportunity to prepare.  Givens's counsel asked for and received many continuances to prepare.  Even assuming Givens could prove that Cruz falsely accused him, there was nonetheless overwhelming evidence of his guilt: the testimony of the five law enforcement officials and of J.C. herself.  If there was error, it was harmless.

Regarding Cruz's priors, they had minimal probative value in the face of the main issue in the case: whether Givens was guilty of trafficking J.C.  The excluded convictions were remote— the oldest one pre-dated Givens's trial by nearly thirty years and the most recent one pre-dated it by fifteen years.

The trial court properly exercised its discretion to conduct the trial and limit Cruz's testimony to relevant matters.  (See *People v. Schilling* (1987) 188 Cal.App.3d 1021, 1032–1033.)

B

Lastly, we turn to the court's decision to sentence Givens to the upper term based on the applicability of aggravating factors relating to his criminal history in Rules 4.421(b)(2) and (b)(3).

Givens concedes he admitted the four prior felony convictions.  However, he argues he never expressly admitted that his "prior convictions as an adult" were "numerous and of increasing seriousness" as required by Rule 4.421(b)(2).

Our Supreme Court's recent decision in *People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*) forecloses this argument.  What Givens admitted or did not admit is immaterial.  Instead, the relevant inquiry is whether "an appellate court can conclude beyond a reasonable doubt that a jury would have found true all of the aggravating facts relied upon by the trial court to justify an

6

upper term sentence, or that those facts were otherwise proved true in compliance with the current statutory requirements." (*Lynch*, *supra*, 16 Cal.4th at 768.)

We answer the *Lynch* inquiry in the affirmative. The court relied on two aggravating factors when it imposed the upper term in sentencing Givens: Rule 4.421(b)(3), that Givens served a prior term in prison or county jail under section 1170(h); and Rule 4.421(b)(2), that Givens's "prior convictions as an adult . . . are numerous or of increasing seriousness." Both factors are undisputed. Based on Givens's admissions that he served a prison term and had four felony convictions as an adult, a jury could find true both aggravating facts the trial court relied on in sentencing him. The trial court properly imposed the upper term for Givens's human trafficking conviction.

**DISPOSITION**

We affirm the judgment.


                                                    WILEY, J.


We concur:



          STRATTON,  P. J.



          GRIMES, J.



7